*473 MR. JUSTICE CASTLES,
(dissenting) :
I dissent.
The majority opinion is strange. The contract involved reads:
“CONTRACT OF SALE
“DUPLICATE
“Harlem File Copy
“THIS AGREEMENT, entered into this 9-25, 1970 between Frank Billmayer of Hogeland, Montana first party, and Equity Coop Assn of Harlem, Montana second party, WITNESSETH:
“That in consideration of the sum of $............, in hand paid by second party to first party, the receipt of which is hereby acknowledged, first party hereby sells and agrees to deliver to said second party at its elevator at Farm within............days of this date, the following described wheat, subject to reasonable dockage, to-wit:
“20,000 Bu. Bly a. 1.40 per 100# on Farm. (48# Bly or Better)
“It is agreed settlement for wheat shall be made by second party on the basis market premiums or discounts and the above amount of advance payment shall be deducted as a part of such full settlement.
“If first party has not made full delivery of said grain to second party, as above specified, said second party may at its option provide facilities for securing said delivery, and first party agrees to peaceably permit such delivery. (This grain is being sold to arrive — therefore the necessity of immediate delivery.)
“First party warrants full title of said grain and that same is free and clear of all liens and encumbrances.
“It is understood and Agreed that this is a Contract of Sale, and not a Contract for Sale.
*474 “In the presence of:
S/ Frank Billmayer
First Party and Seller
................................................... S/ Equity Coop Assn.
Second Party and Purchaser ................................................... S/ By: Gerald C. McNutt”
The contract is for wheat — yet it is for barley. The delivery date blank is drawn through — yet it states “immediate delivery”. The price is $1.40 per 100# on Farm — yet it provides settlement of wheat on the basis of “market premiums, or discounts”. It provides 48# barley or better.
The contract on its face is totally ambiguous, but the majority opinion states that “The controlling issue is the precise time that title to the grain passed * * *.”
Interestingly the majority opinion says that “the contract * * * is clear and unambiguous # *
From the contract itself, there are clearly uncertainties. Unless the contract called for immediate delivery and payment, it is certainly uncertain as to the delivery date and date of payment. Either the contract is for barley (or wheat), for immediate delivery or an indefinite time; for immediate payment or settlement on the basis of market premiums or discounts; or, we leave these matters to the testimony of the parties.
The manager of plaintiff Equity Cooperative testified that the parties who were to pick up the barley were informed to do so as soon as possible, and they were to do it at the time the barley was sold. One Stewart, a trucker, was to pick it up. Stewart was to pay Equity $1.45 and Equity was to deduct five cents per hundred as its commission. It is this five cent commission that Equity is suing for. The resale of the barley to the trucker responsible for picking the barley up was testified to by the manager of Equity Cooperative Association.
*475 The written agreement referred to the necessity of immediate delivery. There were no trucks operating in October. Defendant expected the grain, particularly that laying on the ground exposed to grazing cattle to be picked up and paid for in two weeks. Stewart, who was to pick it up, never did and there is no testimony that he ever picked up replacement grain or that Equity Cooperative ever lost a nickel because of it.
The verdict is simply not justified by the evidence. There is no substantial evidence to uphold it, and I would reverse.